UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>RAVI PATEL,<br><br>    Defendant. | Crim. No. 20-mj-14001 (ZNQ)<br><br><br>**OPINION AND ORDER** |

This matter comes before the Court upon Defendant Ravi Patel's ("Defendant") Motion for Release Pending Trial ("Motion"), pursuant to 18 U.S.C. § 3142.[1] The United States of America ("United States") opposed, and Defendant replied. Defendant also submitted his medical records and, at the request of the Court, the United States submitted a supplemental letter, surveying decisions by this Court related to pretrial release and coronavirus disease. The undersigned held a telephonic conference with the parties on April 6, 2020, and the parties have consented to the Court deciding the Motion on the papers.

In deciding Defendant's Motion, the Court is acutely conscious of the impact that the spread of severe acute respiratory syndrome coronavirus 2 ("SARS-CoV-2") has had on this District and the United States. The Court considers Defendant's safety, lending the utmost deference to the unprecedented crisis facing the Country and, in particular, New York and New Jersey. At the time of this Opinion and Order, global cases have surged passed the one million mark, with the United States, at more than 400,000 cases, accounting for a third of the world's

---

[1] Due to the expeditious nature in which the parties, while working remotely, were providing information to the Court for its consideration, the parties were permitted to publicly file their respective motion papers after the issuance of this Opinion and Order. The parties will file as soon as practicable.

total. *Coronavirus Pandemic*, Worldometers, https://www.worldometers.info/coronavirus/ (last updated Apr. 8, 2020, 6:26 PM); *Coronavirus United States*, Worldometers, https://www.worldometers.info/coronavirus/country/us/ (last updated Apr. 8, 2020, 6:26 PM). This District alone is currently facing approximately 50,000 cases while neighboring New York battles now almost 150,000 cases as the epicenter of the outbreak. *Coronavirus United States*, Worldometers, *supra*. More than 14,000 Americans have already lost their lives to the disease caused by SARS-CoV-2, coronavirus disease ("COVID-19"), and fair data models predict more than 60,000 Americans will die despite our best efforts in social distancing. *Coronavirus United States*, Worldometers, *supra*; *COVID-19 Projections*, IHME, https://covid19.healthdata.org/united-states-of-america (last updated Apr. 8, 2020) ("COVID-19 projections assuming full social distancing through May 2020"). We are faced with a national crisis unparalleled since World War II, which, necessitated by Americans' efforts to stop the spread of the virus, has been accompanied by an economic freefall that may arguably rival the Great Depression. *Most Americans Say Coronavirus Outbreak Has Impacted Their Lives*, Pew Research Ctr. (Mar. 30, 2020), https://www.pewsocialtrends.org/2020/03/30/most-americans-say-coronavirus-outbreak-has-impacted-their-lives/; Marco della Cava, *'Life May Change for Us All': How We Respond to the Coronavirus Crisis Will Be Defining, Historians Say*, USA Today (Mar. 29, 2020, 9:29 AM), https://www.usatoday.com/story/news/nation/2020/03/29/coronavirus-crisis-response-reshape-american-history/5079760002/. There is no vaccine to prevent COVID-19, leaving radical social distancing measures as the only method to prevent the spread of the virus and, consequently, limit the number of those infected with the disease and shield our healthcare system from collapse. *Coronavirus Disease 2019 (COVID-19): How to Protect Yourself & Others*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last

visited Apr. 8, 2020); Andrew Hay, *U.S. States Scramble to Slow Virus Spread, Prevent Hospital Collapse*, Reuters (Mar. 12, 2020, 6:33 PM), https://www.reuters.com/article/us-health-coronavirus-usa-mitigation/u-s-states-scramble-to-slow-virus-spread-prevent-hospital-collapse-idUSKBN20Z3QM. In these times, the Court's role is especially important, both to ensure the safety of all those who appear before it, to carefully choose the course of action that will best safeguard the public, and to uphold our collective principles. It is with this heavy burden that, after carefully considering Defendant's Motion and the United States' objections, for good cause shown, and for the reasons set forth below, Defendant's Motion is denied.

## I.    PROCEDURAL HISTORY

By Complaint dated January 9, 2020, the United States charged Defendant with conspiracy to commit mail fraud, in violation of 18 U.S.C. §§ 1341 and 1349, and identity theft, in contravention of 18 U.S.C. § 1028(a)(3). (Compl. 1–3, ECF No. 1.) Defendant was arrested on January 13, 2020, and the Court conducted an initial hearing before the undersigned the same day. (Initial Appearance Mins., ECF No. 4.) The United States moved for detention pending trial, to which Defendant consented on condition that his right to seek bail at a later date be preserved. (*Id.*; Detention Order 1, ECF No. 9.) The Court granted the United States' Motion without prejudice to Defendant's right to later apply for bail. (Detention Order 1.) Defendant is also subject to an Immigration and Customs Enforcement ("ICE") detainer.

By way of letter brief, Defendant, who is diabetic, requested the Court hold a Detention Hearing and proposed he be released pretrial to a third-party custodian under conditions of home confinement and location monitoring in the wake of the global pandemic and national crisis caused by the spread of SARS-CoV-2. (Moving Br. 1.) The United States opposed, and Defendant replied. The Court considers Defendant's plea for pretrial release in the first instance within.

## II.     LEGAL STANDARD

"[S]ubstantive due process protects freedom 'from government custody, detention, or other forms of physical restraint prior to any determination of guilt.'" *Holland v. Rosen*, 895 F.3d 272, 293 (3d Cir. 2018) (quoting *Steele v. Cicchi*, 855 F.3d 494, 502 (3d Cir. 2017) (further quotation omitted)). In specific circumstances, however,

> an arrestee's right to freedom from pretrial detention is subordinated to other interests . . . particularly where there has been an adjudication that detention is necessary because an "arrestee presents an identified and articulable threat to an individual or the community," *United States v. Salerno*, 481 U.S. 739, 750–51, (1987), or to "ensure [an arrestee's] presence at trial," *Bell v. Wolfish*, 441 U.S. 520, 523 (1979).

*Steele*, 855 F.3d at 502 (alteration in original).

Consistent with those principles, *see Salerno*, 481 U.S. at 748, the Bail Reform Act of 1984 (the "BRA") "favors pretrial release and imposes a duty on federal courts to make determinations regarding the bail status of federal criminal defendants," *United States v. Duncan*, No. 19-cr-6717, 2019 WL 4316675, at *1 (D.N.J. Sept. 11, 2019) (citing 18 U.S.C. § 3142(a)). Pursuant to section 3142(f), the BRA directs the Court when holding a detention hearing "to determine whether any condition or combination of conditions set forth in subsection (c) of [section 3142] will reasonably assure the appearance of such person as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(f). Further, section 3142(g) requires the Court in making that determination to "take into account the available information concerning" the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of

4

> residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Indeed, given the "statutory responsibility to set whatever restrictions on release are necessary to ensure against an applicant's flight or potential danger, bail should be denied under the [BRA] only as a matter of last resort." *United States v. Provenzano*, 605 F.2d 85, 94 (3d Cir. 1979); *see also Duncan*, 2019 WL 4316675, at *1. "Pursuant to 18 U.S.C. § 3142(e), however, if after a detention hearing a court determines that 'no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community,' the court must Order the detention of the person before trial." *Id.* at *2 (quoting *United States v. Vargas*, No. 13-2044, 2013 WL 3223419, at *4 (D.N.J. June 25, 2013) (quoting in turn 18 U.S.C. § 3142(e))). An order of pretrial detention must either be supported by clear and convincing evidence that the defendant poses a danger to the community, or by a preponderance of the evidence that the defendant is a severe flight risk. *United States v. Himler*, 797 F.2d 156, 160–61 (3d Cir. 1986). While not fully defined, "[w]hen assessing danger to the community [under the BRA], 'danger may, at least in some cases, encompass pecuniary or economic harm.'" *United States v. Giampa*, 904 F. Supp. 235, 358 (D.N.J. 1995) (quoting *United States v. R.G. Reynolds*, 956 F.2d 192, 192 (9th Cir.1992)); *see also United States v. Madoff*, 586 F. Supp. 2d 240, 253 (S.D.N.Y. 2009) ("The Court recognizes, therefore, that there is jurisprudence to support the

consideration of economic harm [under the BRA] in the context of detention to protect the safety of the community.").

Separately, the Court may temporarily release a defendant if it "determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The defendant shoulders the burden of demonstrating a compelling reason for his or her temporary release. *United States v. Dupree*, 833 F. Supp. 2d 241, 246 (E.D.N.Y. 2011). "Compelling reasons may exist . . . where the defendant's serious medical conditions warrant release . . . ." *United States v. Stephens*, No. 15-CR-95, 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020) (citing *United States v. Rebollo-Andino*, 312 F. App'x 346, 348 (1st Cir. 2009) (explaining that a defendant who is denied bail may later, under extraordinary circumstances, request temporary release under section 3142(i) should future developments with his medical conditions so warrant); *United States v. Birbragher*, No. 07-cr-1023, 2008 WL 1883504, at *2 (N.D. Iowa Apr. 25, 2008) (describing *United States v. Scarpa*, 815 F. Supp. 88 (E.D.N.Y. 1993), and *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D.P.R. 2002), as cases in which courts found "compelling reason" to temporarily release defendants due to the defendants' serious medical issues).

Requests for pretrial release due to concerns over SARS-CoV-2 and COVID-19 usually appear as a request for temporary release under section 3142(i), but those cases are no less instructive. Helpful examples include *United States v. Clark*, No. 19-40068-01, 2020 WL 1446895 (D. Kan. Mar. 25, 2020), *United States v. Williams*, No. 13-544, 2020 WL 1434130 (D. Md. Mar. 24, 2020), and *United States v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036 (E.D.N.Y. Mar. 20, 2020). In *Williams*, the Court, reconsidering under section 3142(f) whether a repeat tax fraud offender with a history of misconduct on release should be granted pretrial release in light of the

pandemic and the defendant's age, denied his application, stating "[t]he combination of his age and the existence of COVID-19, standing alone, are not sufficient . . . ." 2020 WL 1434130, at *1, *3. The Court also highlighted the "extensive" measures taken by the facility in which the defendant was housed, characterizing the measures as "adequate" because "it appears the facility has a lower incidence of infection than the general population." *Id.* at *3.

Similarly, in *Clark*, a forty-three-year-old insulin-dependent diabetic defendant, charged with conspiring to manufacture, distribute, and possess with the intent to distribute substantial quantities of fentanyl and heroin (and derivatives thereof), moved for temporary release under section 3142(i), asserting he was at an increased risk of contracting SARS-CoV-2 and developing complications from COVID-19. 2020 WL 1446895, at *2. While recognizing "that [the defendant's] status as a diabetic puts him at an increased risk for experiencing severe illness if he were to contract COVID-19," the Court denied his motion, finding he had not established a compelling reason because "[h]is arguments regarding the risk of an outbreak at his facility [were] speculative," and "he ha[d] not established that his proposed release plan would necessarily alleviate his overall COVID-19 risks." *Id.* at *8. The Court opined that "it appears that, if he were released, he simply would be trading one set of problems (*e.g.*, reduced opportunities for social distancing . . .) for another set of problems (*e.g.*, contamination risks associated with travel and being in an uncontrolled environment, and potentially reduced access to quality healthcare)." *Id.* The Court noted that "inmates may not be able to fully adhere to optimal social distancing guidelines, [but] these circumstances are generalized to all individuals in the prison system," and the facility the defendant was housed at "implemented meaningful measures to try to minimize the likelihood of the virus entering the facility." *Id.* at *6. And in *Hamilton*, a defendant who was charged with conspiracy to murder while engaged in narcotics trafficking requested temporary

release under section 3142(i) based on his advanced age, health condition, and the possibility of SARS-CoV-2 spreading through the prison in which he was being held. 2020 WL 1323036, at *1–2. The Court denied temporary release finding that, considering the risk defendant's release would pose to the community, the mere possibility of an outbreak where there have been no reported cases, where the prison took precautions to prevent an outbreak, and where defendant had no preexisting respiratory conditions, did not amount to a compelling reason. *Id.* at *2.

This Court has followed a similar line of reasoning. (*See, e.g.*, *United States v. Small*, No. 19-mj-08350 (D.N.J. Apr. 2, 2020) (denying bail application of COVID-19 positive defendant with high blood pressure due to the danger his release would pose to the community); Order Denying Mot. for Temp. Release, ECF No. 79, *United States v. Goettsche*, No. 19-cr-877 (D.N.J. Mar. 30, 2020) (denying temporary release under section 3142(i) where the motion was based on the speculative risk of infection); Text Order, ECF No. 19 *United States v. White*, No. 20-cr-2003 (D.N.J. Mar. 25, 2020) (denying bond application of defendant who claimed his long-term drug use made him more susceptible to the virus because of the danger release posed to the community); Order Denying Pretrial Release, ECF No. 17, *United States v. Gaines*, No. 19-mj-5065 (D.N.J. Mar. 20, 2020) (denying release under 3142(f) and (i) despite Defendant's age and chronic lung disease because the defendant posed a danger to the community and the facility in which he was housed implemented protocols to help prevent the virus from entering the prison population), *aff'd* Detention Order, ECF No. 19, *Gaines*, No. 19-mj-5065 (D.N.J. Apr. 3, 2020)).) (*Cf.* Tr. of Telephone Conference 12:17–23, 33:15–17, 37:15–38:19, 39:22–24, 43:16–23, ECF No. 158, *United States v. Duncan*, No. 19-mj-6717 (D.N.J. Apr. 6, 2020) (granting temporary release for forty-five days under 3142(i) where the defendant had multiple underlying health conditions and

posed no risk of flight, and where the facility had thirty-seven inmates and staff test positive for COVID-19).)

An important aside, it is unclear whether Defendant is requesting the undersigned also lift the ICE detainer. (*See* Moving Br. 4.) "The BRA applies to federal criminal proceedings, and detention and release decisions in those cases are subject to the BRA." *United States v. Soriano Nunez*, 928 F.3d 240, 246 (3d Cir. 2019). "Detention and release decisions by immigration and other government officials are subject to different statutory frameworks," and "nothing in the BRA gives a district court the authority to compel another sovereign or judge in federal administrative proceedings to release or detain a defendant." *Id.* "An alien may seek district court review of a detention order in limited circumstances pursuant to 28 U.S.C. § 2241." *Id.* at 245 n.7 (citing as examples *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469, 470-71 (3d Cir. 2015) (ordering the grant of a § 2241 habeas petition challenging ICE detention under 8 U.S.C. § 1226(c) pending removal proceedings); *Sylvain v. Att'y Gen.*, 714 F.3d 150, 153, 155 (3d Cir. 2013) (reviewing grant of a § 2241 habeas petition seeking release from ICE detention under 8 U.S.C. § 1226(c))). Consequently, to the extent Defendant is requesting such relief, it is denied because the undersigned does not have the authority to grant it under the BRA.

### III.   PARTIES' ARGUMENTS

Because of his diabetes, Defendant asserts he is "at an elevated risk of death or serous illness if he is infected by the COVID-19 virus." (Moving Br. 1.) Specifically, he notes patients with diabetes have a 9.2% mortality rate, "a significantly higher rate than is seen in the general population." (*Id.* (citing CDC COVID-19 Response Team, *CDC Preliminary Estimate of the Prevalence of Selected Underlying Health Conditions Among Patients with Coronavirus Disease – United States, February 12 – March 28, 2020*, CDC (Mar. 31, 2020),

www.cdc.gov/mmwr/volumes/69/wr/mm6913e2.htm).) Defendant highlights that jails are congregate environments where people live and sleep in close proximity and correctional officers cycle in and out, acting as vectors for the disease. (*Id.*) As evidence, Defendant cites Rikers Island, which has an infection rate of 4.03%, whereas New York City, the global epicenter of the pandemic, has an infection rate of 0.51%. (*Id.* at 2 (citing *COVID Infection Tracking in NYC Jails*, Legal Aid Society, https://www.legalaidnyc.org/covid-19-infection-tracking-in-nyc-jails/).) Defendant argues it is impossible to observe social distancing measures or observe proper hygiene within MCCI, and that the only way to ensure his safety is to allow him pretrial release before he catches the virus. (*Id.*) Defendant emphasizes that there is a consensus among epidemiologists that eligible offenders should be released to stem the spread of the virus and that Dr. Marc Stern, a correctional public health expert, recommended the release of eligible individuals, especially those with increased vulnerability, to reduce the health and economic burden to the community at large. (*Id.* (citing Moving Br. Ex. B, Stern Decl. ¶¶ 10–11).)

With respect to the section 3142(g) factors, Defendant argues his medical condition and risk of severe illness "alone" should be sufficient to tip the balance of the third factor to pretrial release. (*Id.* at 4.) He also highlights that his pending charges are nonviolent, that during the pendency of his only other criminal charges in 2019 he was released on home detention, that he has strong community ties to New Jersey, and that Pretrial Services has approved a third-party custodian. (*Id.*) As to his immigration detainer, Defendant argues it is no obstacle to his release under the BRA, though, as noted above, it is unclear whether Defendant believes this Court can order his release pursuant to the BRA or whether he believes ICE will voluntarily cancel the detainer or, failing that, that he will pursue relief from the District Judge through a petition for habeas corpus. (*Id.* (citing *Avendano Hernandez v. Decker*, No. 20-1589, 2020 WL 1547459

(S.D.N.Y. Mar. 31, 2020) (habeas corpus); *Coronel v. Decker*, No. 20-2472, 2020 WL 1487274 (S.D.N.Y. Mar. 27, 2020) (same); *Basank v. Decker*, No. 20-2518, 2020 WL 1481503 (S.D.N.Y. Mar. 26, 2020) (same)).) He adds, if anything, his immigration detainer is only one factor in the analysis under the BRA. (*Id.* at 5.)

The United States responds that Defendant "is charged for his role in an expansive international fraud and money laundering conspiracy" where the perpetrators, posing as federal agents, coerced United States citizens into sending money through the mail, which was collected and either laundered through personal or corporate bank accounts or forwarded to India. (United States' Resp. 1.) Beyond the charged conduct, the United States claims to have found evidence that Defendant's participation was more extensive than initially charged; particularly that, rather than three victims and a total loss of $44,300, there are over seventy victims from whom Defendant received almost $300,000. (*Id.* at 8–9.) The United States stresses that Defendant's risk of flight and danger to the community remain unchanged, highlighting that he booked a flight back to India immediately following his sentence on his state charges and was able to reschedule that flight. (*Id.* at 2, 7.) Emphasizing Defendant's access to fraudulent documents, the United States notes that Defendant booked and rescheduled the flight despite his passport having been seized by state authorities. (*Id.* at 7 n.2.) Further, the United States argues Defendant poses a financial danger to the community. (*Id.* at 6–7.) It contends that the pandemic has created a "plethora of frauds" and that Defendant could easily resume his participation simply by accessing a phone or computer. (*Id.* at 7.) The United States urges the Court to find Defendant poses a danger to the public, particularly to vulnerable individuals, like the elderly, during a time when many people are financially struggling. (*Id.*)

Turning to Defendant's medical condition, the United States notes that, despite his fear of COVID-19, Defendant has refused treatment for his diabetes. (*Id.* at 2–3.) Additionally, the United States goes into detail about the extensive protocols MCCI has taken to prevent the virus from spreading to the prison population, including COVID-19-specific medical intake questions, the quarantine of all individuals answering affirmatively to those intake questions in negative pressure cells, the immediate hospitalization of new inmates presenting symptoms of COVID-19, the relocation of any inmate presenting flu-like symptoms to a negative pressure cell, the quarantine and influenza testing of inmates relocated to negative pressure cells, the cancellation of all contact visits, additional hand sanitizer dispensers in high traffic areas, and the preparation of one of MCCI's housing units to house multiple inmates should multiple inmates require quarantine. (*Id.* at 3–4.) It concedes, however, that two prisoners in MCCI have tested positive for COVID-19 and are under quarantine. (*Id.* at 3 n.1.)

Defendant pushes back on any alleged inference by the United States that he has access to a fraudulent passport, contending that only his passport information was required to book the flight, and that the mere fact he booked a flight does not mean he could have boarded the plane without his passport. (Def.'s Reply 2.) Absent a passport and in light of his strong ties to New Jersey, consisting of a close family friend, and his other ties to the United States, specifically his family in Florida, Defendant contends his risk of flight is nothing more than ordinary, far from the unusually serious risk intended by Congress in the BRA. (*Id.* at 3–4.) Defendant stresses that his only alleged role in the conspiracy was collecting packages, which would be addressed by location monitoring and home detention. (*Id.* at 4.) He adds that restrictions on his access to the internet could further allay any fears that he poses an economic danger to the community. (*Id.*) Finally, Defendant asserts MCCI's precautions are far from sufficient because they only address

symptomatic inmates, whereas potentially more than fifty percent of people infected with SARS-CoV-2 are asymptomatic. (*Id.* at 5 (citing *As Many as Half of Those with the Coronavirus Could Be Asymptomatic, Fauci Says*, N.Y. Times, https://www.nytimes.com/2020/04/06/world/coronavirus-live-news-updates.html).)

## IV. FACT FINDINGS AND CONCLUSIONS

Defendant is charged with conspiracy to commit mail fraud and identity theft. (Compl. 1–3.) Defendant allegedly posed as a Federal Bureau of Investigation ("FBI") agent named Ryan Keller and, over the phone, attempted to coerce someone into sending him $22,500. (*Id.* at 4–5.) In an interview following his arrest, Defendant allegedly told law enforcement that he was paid to fly from his native India to the United States, where he was given approximately thirty identifications all with his photograph and was directed to use those identifications to pick up packages containing thousands of dollars at specified locations. (*Id.* at 6–7.) Law enforcement seized thirty identifications from Defendant, all of which were determined to be fraudulent. (*Id.* at 8.) Since his arrest, the United States claims to have uncovered further evidence of Defendant's participation in the alleged conspiracy and that there may be more than seventy victims.

Defendant reported his age as thirty-five to Pretrial Services on January 13, 2020, but submitted medical records to the Court dated March 16, 2019, that indicated his age was thirty-three. Defendant is diabetic, which significantly increases his risk of serious health complications and death if he were to contract SARS-CoV-2 and develop COVID-19. He is an Indian national, subject to removal proceedings, and his wife lives in India. Despite his passport being seized by state authorities, Defendant scheduled a flight to India for the day after his sentence on his state charges, which he then rescheduled. Defendant's mother, son, and brother reportedly reside in Florida. Defendant's brother has custody of his son. Since December 2019, he has lived in New

Jersey with someone he considers a family member. Defendant is unemployed and currently has no source of income other than that derived from his participation in the unlawful conduct alleged by the United States. Defendant has two outstanding municipal warrants related to his failure to appear in court in other jurisdictions, and was convicted of his related state charges. He also likely has access to fraudulent identification documents and could easily resume his alleged fraudulent activities.

### A. Risk of Flight

Finding little connection to New Jersey, significant ties to India, a history of nonappearance, Defendant's likely access to fraudulent identifications, an inability to provide collateral, and his attempts to leave the country, the Court finds the United States has demonstrated by a preponderance of the evidence that Defendant is a severe flight risk. Further, the Court finds no conditions of release or combination of conditions that are sufficient to ensure Defendant will appear in the future.

Even though Defendant has refused treatment for his diabetes, increasing his risk of severe health complications were he to contract COVID-19, the Court does not consider Defendant's vulnerable health condition in the face of the current national crisis lightly. But while the Court is sympathetic to Defendant's fear of being exposed to the virus, it cannot circumvent the mandates and policy goals of the BRA. *Cf. United States v. Raia*, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) (explaining the mere existence of COVID-19 cannot justify circumventing statutory administrative mandates). The Court finds a severe risk that Defendant will flee if allowed to be released. At the same time, the Court finds MCCI has established strict protocols to protect the prison population, including Defendant, from being exposed to the virus and to detect and stop its spread. MCCI's protocols are significant and there is no indication that they are not

effectively protecting its population. While the Court is concerned that recently MCCI has detected two cases of COVID-19, at this juncture—and with only two detected cases—the Court does not find the Defendant's speculative fear of a SARS-CoV-2 outbreak at MCCI and his subsequent infection sufficient to overcome the risk of him fleeing if released. *See* Order Denying Pretrial Release, *Gaines*, No. 19-cr-5065; *Clark*, 2020 WL 1446895, at *6, *8; *Williams*, 2020 WL 1434130, at *1, *3.

### B. Danger to the Community

Additionally, the Court is convinced that Defendant poses a significant danger to the community. While Defendant's alleged actions are nonviolent, in a time of extreme economic uncertainty, fear, and particular vulnerability for many Americans, the risk and ease at which Defendant could resume his participation in the alleged fraud presents a clear and immediate danger to the public. Moreover, the fact Defendant lacks any legitimate source of income provides a strong incentive for him to continue the alleged conduct upon release. The Court does not agree that internet restrictions and location monitoring will be effective in deterring Defendant. Regarding his medical history, again, at this point, the danger posed by Defendant is not outweighed by the speculative concern that contracting the virus at MCCI will eventually, or does, supersede the general public risk. The Court acknowledges that social distancing measures may be difficult, if not impossible, to observe in prison, but the strict measures taken by MCCI appear, at least for now, to be effective.

### C. Compelling Circumstances for Temporary Release

While neither party discusses section 3142(i) specifically, the parties' arguments are so similar to those usually made under that provision that it is worth acknowledgment. At this stage, considering MCCI's protocols and the presence of but two detected cases, the Court's balancing

of the risk of flight, harm to the public, and the risk of an outbreak at MCCI resulting in the Defendant being infected, an analysis under 3142(i) would likely lead to the same conclusion. That said, much is still unknown about SARS-CoV-2 and the situation in MCCI. All indications with respect to MCCI's protocols are currently positive. But the situation evolves daily, and in the event circumstances upon which this Court makes its determination herein change, the Court is willing to reconsider Defendant's release.

### V.    CONCLUSION AND ORDER

Finding by preponderance of the evidence that Defendant is a severe flight risk, by clear and convincing evidence that he presents an immediate danger to the community, and that no combination of conditions will be sufficient to significantly mitigate his risk of flight or danger to the public, the Court shall order Defendant remanded.

For the reasons stated above and for other good cause shown,

**IT IS** on this 8th day of April, 2020 **ORDERED** that:

1. The Court finds by a preponderance of the evidence that Defendant Ravi Patel ("Defendant") is a severe flight risk.

2. The Court finds by clear and convincing evidence that he presents a danger to the community.

3. The Court finds no combination of conditions will be sufficient to mitigate his risk of flight or danger to the public.

4. Defendant's Motion for Release Pending Trial is **DENIED**.

5. Pursuant to Title 18, United States Code, Section 3142(e), that Defendant be detained, and that he be committed to the custody of the Attorney General or his authorized representative.

6. Pursuant to Title 18, United States Code, Section 3142(i), that Defendant be afforded reasonable opportunity for private consultations with counsel.

7. Pursuant to Title 18, United States Code, Section 3142(i), that, upon order of this or any other court of the United States of competent jurisdiction or on request of an attorney for the United States, Defendant shall be delivered to a United States Marshal for the purpose of appearances in connection with court proceedings.

/s Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES MAGISTRATE JUDGE**